**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Spybar Management, LLC | Case No. 19-05128 |
| Debtor. | Hon. Carol A. Doyle |

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on February 28, 2019 at 10:30am, or as soon thereafter as counsel may be heard, we shall appear before the Honorable Judge Carol A. Doyle, Bankruptcy Judge, in Courtroom 742, U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other Judge who may be sitting in her place and stead, and shall then and there present the **Debtor's Motion for Interim Authority to use Cash Collateral Pursuant to 11 U.S.C. §§ 363(c) and 363(e) and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure**, a copy of which is attached and hereby served upon you, at which time and place you may appear if you so see fit.

Respectfully Submitted,

Spybar Management LLC,
  Debtor herein.

By:   /s/ E. Philip Groben
      One of its Attorneys

E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
Matthew T. Gensburg (ARDC# 6187247)
Email: mgensburg@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
Fax:  312-263-2242

## <u>CERTIFICATE OF SERVICE</u>

STATE OF ILLINOIS    )
                       )     SS
COUNTY OF COOK    )

E. PHILIP GROBEN, being first duly sworn on oath, deposes and stated that he served a copy of the foregoing Notice together with a copy of the Motion attached thereto on the persons named below, by either service through CM/ECF, facsimile, FedEx Overnight, or as otherwise indicated, on February 27, 2019.        BY: /s/ E. Philip Groben

Attorney General for the State of Illinois
Attn: Bankr. Section
500 S. 2nd Street
Springfield, IL 62701
Via Fax: (217) 785-2551

Illinois Department of Revenue
Attn: Bankr. Section
100 West Randolph St.
Chicago, IL 60601
Via Fax: (217) 782-6337

Internal Revenue Service
Centralized Insolvency
PO Box 7643
Philadelphia, PA 19101-7346
Via Fax: (855) 782-6337

United States Attorney of the
Northern District of Illinois
Attn: Bankruptcy Section
219 S. Dearborn St., 5th Floor
Chicago, IL 60604
Via Fax: (312) 353-2067

United States Trustee for the
Northern District of Illinois
219 S. Dearborn St., Rm. 873
Chicago, IL 60604
Via CM/ECF

ASCAP
PO Box 331608
Nashville, TN 37203
Via Fax: (615) 742-5020

Bank Direct
Two Conway Park
150 North Field Dr, Ste 190
Lake Forest, IL 60045
Via Fax: (877) 839-2738

Byline Bank
180 N. LaSalle St.
Chicago, IL 60601
Via Fax:
Via Email: pgarga@chuhak.com

Capital One Bank
PO Box 71083
Charlotte, NC 28272
Via Fax:

Chase Cardmember Services
PO Box 9014
Palatine, IL 60094
Via Fax: (866) 958-0927

Citibank/Choice
PO Box 183037
Columbus, OH 43218
Via Fax: (866) 533-0503

Dino Gardiakos
814 N. Wood St., #2S
Chicago, IL 60622
Via Fax:

Garrett Belschner
230 W. Division St., #1202
Chicago, IL 60610
Via Overnight Service

Garrett Birch
3936 N. Pulaski Rd. #2N
Chicago, IL 60641
Via Overnight Service

John Curley
340 W. Superior #604
Chicago, IL 60654
Via Overnight Service

Marco Sgalbazzini
5257 Willowcrest Ave., Apt. 202
North Hollywood CA 91601
Via Overnight Service

Marty McKenna
PO Box 221089
Chicago, IL 60622
Via Overnight Service

Michael Roche
2206 Henning Pl.
Plainfield, IL 60586
Via Overnight Service

Passarelli-Statewide Ltd.
9240 Broadway Ave.
Brookfield, IL 60068
Via Fax: (708) 387-0252

Phil Groves
3651 Cardiff Ave.
Los Angeles, CA 60034
Via Overnight Service

Skyline Management Co.
303 Erie St., Ste. 220
Chicago, IL 60654
Via Overnight Service

Southern Glazer's Wine and Spirits
300 W. Crossroads Pkwy.,
Bolingbrook, IL 60440
Via Fax: 630) 685-3462


/s/ E. Philip Groben

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| Spybar Management, LLC | Case No. 19-05128 |
| Debtor. | Hon. Carol A. Doyle |

**EMERGENCY MOTION OF SPYBAR MANAGEMENT LLC FOR INTERIM
AND FINAL AUTHORITY TO USE CASH COLLATERAL PURSUANT TO
11 U.S.C. §§ 363(c) AND 363(e) AND RULE 4001(b)
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Spybar Management LLC, debtor and debtor-in-possession (the "**Debtor**"), by and through

its attorneys, E. Philip Groben, Matthew T. Gensburg, and Gensburg, Calandriello & Kanter P.C.,

respectfully submits this motion for interim authority to use cash collateral pursuant to 11 U.S.C

§363 of Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**"), and Rule

4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and scheduling

this matter for a final hearing (the "**Motion**").  In support of the Motion, the Debtor respectfully

states the following:

I.      **EXECUTIVE SUMMARY**

1.      The Debtor is requesting the Court to authorize its use of Cash Collateral on an

interim basis and scheduling the matter for a final hearing.  The Debtor anticipates the need to use

Cash Collateral pursuant to the budget attached as **Exhibit A**[1] (the "**Budget**").  Without the

immediate use of Cash Collateral, the Debtor would likely have to cease operations, which would

result in a loss of jobs for the Debtor's 32 employees, and would greatly reduce the value of the

---

[1] This Motion incorporated by reference all information contained in the budget attached hereto as **Exhibit A**.

Debtor's business and assets.  The relief requested is necessary for the Debtor to: (a) continue the operation of its business as debtor-in-possession; (b) preserve the going-concern value of its operations and assets; and (c) preserve the jobs of approximately 32 employees.  Further, unless the Debtor is immediately authorized to use cash Collateral in the amounts identified in the Budget, the Debtor will suffer immediate and irreparable harm.

2.      As noted in more detail below, Byline Bank, as successor in interest to Ridgestone Bank ("**Byline Bank**" or "**Lender**") asserts liens on substantially all the Debtor's assets existing as of the Petition Date, including equipment, fixtures, inventory, goods, accounts, inventory, chattel paper, and general intangibles.[2]  The costs and expenses, reflected on the Budget, represent those necessary costs required to service and preserve the value of the Spybar through its continued operations.  As a result, some of the cash proceeds generated by the Debtor may represent cash collateral of the Lender.  The Debtor proposes to provide adequate protection of the Lender's interest in the cash collateral by providing the Lender with interim payments and replacement liens on any property owned by the Debtor on the Petition Date and any property acquired thereafter.  Such replacement liens will be in the same nature, extent, priority and validity that the Byline Bank's liens, if any, had as of the Petition Date.

3.      The Debtor's use of the Cash Collateral is required to cover the necessary costs and expenses incurred in its continued operations, through which Spybar will generate the revenue required to allow the Debtor to the continue to operate, while working to restructure its indebtedness and rehabilitate its operations.  The Debtor seeks to use Cash Collateral to fund working capital, operating expenses, fixed charges, payroll, and all other general corporate purposes arising in the Debtor's ordinary course of business, consistent with and in compliance

---

[2] At this time, the Debtor is not prepared to stipulate, and does not stipulate, as to the validity or perfection of the Lender' alleged liens for the purposes of an interim order.

2

with the Budget, and to pay the costs and expenses related to the administration of the Debtor's

bankruptcy case, including reasonable professional fees and certain other expenses as

contemplated in the Budget, and as set forth applicable Interim and/or Final Orders.

## II.     JURISDICTION AND VENUE

4.      On February 27, 2019 (the "**Petition Date**"), the Debtor filed its voluntary petition

for relief under Chapter 11 of the Bankruptcy Code, thereby initiating the above-captioned

bankruptcy case and creating its bankruptcy estate (the "**Estate**").  This Court has jurisdiction over

this Chapter 11 case and the Motion pursuant to 28 U.S.C. §§ 1334 and 157(b).  Venue is proper

in this District pursuant to 28 U.S.C §§ 1408 and 1409.

5.      The Debtor is operating as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107

and 1108.  No Trustee, examiner or statutory committee has been appointed in this Chapter 11

case.

## III.    BACKGROUND

### A.      Nature of the Debtor's Business.

6.      Spybar is an Illinois limited liability company, organized on January 8, 2008.  In

conjunction with a non-filing affiliate, Skyline Management Co., the Debtor operates Spybar

Chicago, a nightclub in Chicago's vibrant River North neighborhood.  Spybar Chicago is known

throughout the country and the around the world as a showcase for both renowned and up-and-

coming musical performers in the house and EDM genres.  A detailed factual background of the

Debtor's business and operations, as well as the events precipitating the commencement of these

cases, is more fully set forth in the *Declaration of Michael Roche in Support of the Debtor's

Chapter 11 Petitions and Requests for First Day Relief* (the "**First Day Declaration**"), filed

contemporaneously herewith and incorporated herein by reference.

### B.      Pre-Petition Date Credit Facilities.

7.      On September 18, 2013, the Debtor entered into a *U.S. Small Business Administration Note and Security Agreement* with Ridgestone Bank in the amount of $1,000,000.00 (the "**Loan Agreement**").  Under the terms of the Loan Agreement, the Debtor granted Ridgestone Bank a security interest in certain of the Debtor's personal property, specifically including, Equipment, Fixtures, Inventory, Goods, Accounts, Instruments, Chattel Paper, and General Intangibles and the products and proceeds of the foregoing.

8.      On October 14, 2016 Ridgestone Bank and Byline Bank executed a merger agreement under which Ridgestone Bank continued under the charter of Byline Bank.  Byline Bank asserts a lien on substantially all of the Debtor's assets exiting as of the Petition Date and cash proceeds arising therefrom acquired by the Debtor after the Petition Date.  According to the Verified Complaint filed by Byline Bank in the action styled *Byline Bank v. Spybar Management, LLC, et al.*, the Loan Agreement went into default on March 1, 2018, and as of August 28, 2018, it was alleged that Byline Bank was owed a balance of $423,043.16, with interest accruing at a per diem rate of $86.93.

9.      On February 22, 2019, a levy in the amount of $33,844.78 in favor of the Illinois Department of Revenue was issued against the Debtor's depository account at Gold Coast Bank. To the extent the levy creates a security interest in the funds held in the Debtor's account, said security interest is limited to the funds within the Debtor's Gold Coast Bank account in an amount not to exceed $33,844.78, and is avoidable as a preferential transfer per 11 U.S.C. § 547(b).

### IV.     RELIEF REQUEST

4

10.     By this Motion, pursuant to 11 U.S.C. §§ 105, 361, and 363, and Bankruptcy Rules 4001 and 6004, the Debtor seeks, among other things, the following:

a.     Pursuant to Bankruptcy Rule 4001, an interim hearing (the "**Interim Hearing**") on the Motion during which the Court may consider entry of the proposed Interim Order attached hereto as **Exhibit B**;

b.     Pursuant to the Interim Order, authorization for the Debtor to use Byline Bank's Cash Collateral and the granting of adequate protection to Byline Bank for, among other things, such use of Cash Collateral and all use and diminution in value of the Byline Bank's pre-petition date collateral;

c.     Pursuant to the Interim Order, authorization for the Debtor to use the Illinois Department of Revenue's Cash Collateral and the granting of adequate protection to Illinois Department of Revenue for, among other things, such use of Cash Collateral and all use and diminution in value of the Illinois Department of Revenue's pre-petition date collateral; and

d.     Scheduling a final hearing (the "**Final Hearing**") to consider entry of a Final Order authorizing the use of the Byline Bank and Illinois Department of Revenue's cash Collateral.

## V.     **BASIS FOR EMERGENCY RELIEF**

11.     The Debtor brings this Motion on an emergency basis given the immediate and irreparable harm that the Debtor will potentially suffer if it is denied the ability to use Cash Collateral, which is necessary to sustain its ongoing business operations and achieve its future business objectives.  The use of Cash Collateral will permit the Debtor to, among other things, preserve the value of the Estate, continue operations, maintain jobs for at least 32 employees,

satisfy its post-petition obligations, and provide the working capital needed to maintain its day-to-day operations.

12.      Absent immediate use of Cash Collateral, the Debtor would likely have to cease business operations to the material detriment of creditors, vendors, suppliers, employees, stakeholders and other partied in interest.  Therefore, the Debtor needs to ensure the availability of such working capital now.  This liquidity is necessary for the Debtor to reorganize and demonstrate to its customers, suppliers, vendors, and stakeholders that it has sufficient capital to ensure ongoing operations.

## VI.      APPLICABLE AUTHORITY

### A.      Adequate protection and Cash Collateral

13.      The Debtor's use of property of its estate is governed by Section 363 of the Bankruptcy Code, which provides in pertinent part that a debtor in possession "may use property of the estate in the ordinary course of business without notice of a hearing." 11 U.S.C. §363(c)(1). However, pursuant to section 363(c)(2) of the Bankruptcy Code, a debtor-in-possession may not use cash collateral without the consent of the secured party or court approval. *See* 11 U.S.C. §363(c)(2).  Section 363(e) of the Bankruptcy Code provides that, upon request of an entity that has an interest in property to be used by the debtor, the court shall prohibit or condition such use as is necessary to provide adequate protection of such interest. *See* 11 U.S.C. §363(e).

14.      Section 361 of the Bankruptcy Code provides a non-exhaustive list of examples of what may constitute adequate protection under §363: (1) periodic cash payments; (2) additional or replacement liens; or (3) any other relief that will result in the party's realization of the "indubitable equivalent" of its interests in the property.  The determination of whether there is adequate protection requires a fact-specific inquiry and is decided on a case-by-case basis. See *In re EES*

*Lambert Assocs.,* 62 B.R. 328, 343 (Bankr.N.D.Ill.1986); *In re O'Connor,* 808 F.2d 1393, 1396

(10th Cir.1987); *In re Martin,* 761 F.2d 472 (8th Cir.1985); *In re Energy Partners, Ltd.,* 409 B.R.

211, 236 (Bankr.S.D.Tex.2009), *In re Mosello,* 195 B.R. 277, 289 (Bankr.S.D.N.Y.1996); *In re*

*Realty Southwest Assocs.,* 140 B.R. 360 (Bankr.S.D.N.Y.1992); *In re Beker Indus. Corp.,* 58 B.R.

725 (Bankr.S.D.N.Y.1986).   The focus of the requirement is to protect a secured creditor from

diminution in the value of its interest in the particular collateral during the period of use. *See in re*

*495 Central Park Avenue Corp.,* 136 B.R. 626. 631 (Bankr.S.D.N.Y.1992); *In re Beker,* 58 B.R.

at 736; *in re Hubbard Power & Light,* 202 B.R. 680 (Bankr.E.D.N.Y.1996).   Further, in order to

facilitate the likelihood of reorganization, courts should be flexible in the application of the

adequate protection standard. See, *In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017,

1019 (10th Cir.1984) (explaining that the Bankruptcy Code attempts to balance the protection of

a secured creditor's property interests against a debtor's need to use cash in order to meet daily

operating expenses and promote the "congressional policy favoring rehabilitation over economic

failure.")

    15.    Byline Bank asserts senior liens, respectively, on Cash Collateral.   As adequate

protection for the Debtor's use of the Byline Bank's Cash Collateral, the Debtor is proposing to

provide Byline Bank with the following forms of adequate protection, to the extent of any

diminution in value of the Lender's pre-Petition Date security interest in the Lender's pre-Petition

date collateral, if any.

> • Monthly Payments. After the Petition date and until such time as the Debtor
>
> no longer uses the Lender's Cash Collateral, the Debtor proposes to deliver to the Lenders
>
> timely and current monthly payments of $6,500.00.

- Replacement liens. The Lender will be granted, from and after the Petition

Date, valid and automatically perfected (without necessity of the execution by the Debtor

of additional security agreements, pledge agreements, financing statements, or other

documents) replacement liens and security interests in all tangible and intangible personal

property acquired by the Debtor after the Petition Date, specifically including all cash

proceeds arising from such property, in the same nature, extent, priority and validity that

such liens, if any, existed on the Petition date.  The post-petition cash proceeds would not

otherwise be subject to the Lender' liens post-petition. *See in re cafeteria Operators, L.P.,*

*299* B.R. 336-37 (9th Cir.BAP 2004) (holding that "a creditor's security interest only

encompasses the cash collected on existing pre-petition accounts" and that receivables

from post-petition accounts were not "proceeds" under section 552(b)).

16.     The Illinois Department of Revenue may hold an avoidable lien upon certain funds

held in the Debtor's depository account at Gold Coast Bank.  As adequate protection for the

Debtor's use of Illinois Department of Revenue's Cash Collateral, the Debtor is proposing to

provide Illinois Department of Revenue, after the Petition Date, valid and automatically perfected

(without necessity of the execution by the Debtor of additional security agreements, pledge

agreements, financing statements, or other documents) replacement liens and security interests in

funds within the Debtor's Gold Coast Bank account in an amount not to exceed $33,844.78, in the

same nature, extent, priority and validity that such liens, if any, existed on the Petition date

(collectively with the adequate protection afforded to Byline Bank above "**Adequate**

**Protection**").

17.     The proposed Adequate Protection, outlined hereinabove and set forth in the

Interim Order, is sufficient to secure the Debtor's projected use of Cash Collateral, as set forth in

8

the Budget, because the projected diminution in value, if any, from the use of Cash Collateral is less than the value of the Adequate Protection proposed to the Lender.  Further, the use of cash Collateral is itself a form of adequate protection, as the only way to preserve the value of the consumer loans which represent the bulk of the Lender's collateral is to continuously and active service those loans in order to maintain their collectability.  In other words, an interruption in loan servicing will dramatically impact the collectability of this debt.  The use of cash collateral also preserves the value of the Debtor's infrastructure and operations as a going concern, which will have minimal value in a liquidation scenario.

**B.      The Use of Cash Collateral is Necessary to Preserve Assets of the Estate.**

18.      It is essential that the Debtor immediately instill its vendors, suppliers, service providers and customers with confidence in its ability to transition its business smoothly through the Chapter 11 process and to operate normally in that environment.  The use of Cash Collateral is necessary to continue relationships with the Debtor's vendors, suppliers and service providers, and also to satisfy actual or pending necessary working requirements for the Debtor's business.

19.      The initial success of this Chapter 11 case and the stabilization of the Debtor's operations at the outset thereof depends on the confidence of the Debtor's vendors, service providers, and customers, which in turn depends on the Debtor's ability to minimize the disruption to its business due to the bankruptcy filing.  If the relief sought in this motion is delayed or denied, the necessary parties' confidence may be shattered, consequently damaging the Debtor's ability to preserve value for the Estate.  In contract, once the use of Cash Collateral is approved and implemented, the Debtor's ability to continue functioning normally will be reasonably assured. Thus, the Debtor submits that its need for authorization to use cash collateral is immediate.

20.     As mentioned above, the Debtor has attached a proposed budget as **Exhibit A** to this motion.[3]  Debtor proposes to use Cash Collateral in accordance with that budget up to a variance of 10% of total disbursements on a cumulative basis.  If the use of Cash Collateral is not authorized, the Debtor will suffer immediate and irreparable and irreparable harm.

### C.     Interim Approval Should Be Granted

21.     Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing on a motion to use Cash Collateral may not be commenced before 14 days after service of that motion. Fed. R. Bankr. P. 4001.  This Court may however, conduct a preliminary hearing before the expiration of that fourteen-day period and likewise authorize the use of Cash Collateral, if necessary, to the extent necessary to avoid immediate and irreparable harm to the Debtor's Estate.

22.     In examining request under this Bankruptcy Rule, courts apply the same business-judgement standard as is applicable to other business decisions. See *in re Ames Dept. Stores, Inc.,* 115 B.R. 34, 38 (Bankr.S.D.N.Y.1990).  The Debtor submits that, for the reasons set forth herein, the immediate use of Cash Collateral, on an interim basis, as requested in this Motion is necessary to avert immediate and irreparable harm to the Debtor's business and the Estate.

23.     The Debtor requests that the court conduct an emergency preliminary hearing on the Motion and authorize the Debtor, from and after the entry of the Interim Order until a final Hearing on the relief requested herein, to use Cash Collateral as necessary. Such authorization will ensure that the Debtor maintains ongoing operations and avoids immediate and irreparable harm and prejudge to its Estate and all parties in interest pending the Final Hearing.

---

[3] The Budget proposes payment of prepetition and post petition obligations to the Illinois Department of Revenue which are owed by Debtor affiliate Skyline Management Co. ("**Skyline**").  The Debtor is responsible for these payments pursuant to an indemnification and represents sales tax liabilities arising from sale of alcoholic beverages under the liquor license held by Skyline.  Payments related to prepetition sales tax liabilities will be held pending Court approval by way of a separate motion.

### D.      Request for Final hearing

24.      As noted above, pursuant to Bankruptcy Rules 4001(b)(2), the Debtor respectfully requests that the Court set a date for the Final Hearing at the earliest date and time of the court's convenience that will ensure adequate notice and due process to all parties-in-interest to this bankruptcy case.

25.      The Debtor respectfully requests that it be authorized to serve a copy of the signed Interim Order, which fixes the time and date for the filing of objections, if any, by first-class mail on the Notices Parties (as defined below) and to any other party has filed a request for notices with this Court and to any Committee, or Committee Counsel, if same shall have filed a request for notice. The Debtor respectfully requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001.

## VII.   **COMPLIANCE WITH LOCAL RULES**

26.      The Debtor's use of Byline Bank Cash Collateral, as set forth in this Motion, does not include any provisions enumerated in Local Rule 4001-2(A)(2).

## VIII.  **NOTICE**

27.      No trustee, examiner or statutory creditors' committee has been appointed in this Chapter 11 Case. This Motion has been provided to: (i) the Office of the United States Trustee for the Northern District of Illinois; (ii) to the Debtor's secured Lender; (iii) counsel for the Debtor's secured Lender; (iv) the twenty (20) largest unsecured creditors of the bankruptcy estate; (v) the Internal Revenue Service; (vi) the Illinois Department of Revenue; and (vii) all parties in interest who have formally appeared and requested notice. The Debtor respectfully submits that no further notice of this Motion is required.

## IX.    **NO PRIOR REQUEST**

28.     No prior application for the relief requested herein has been made to this or any

other court.

Wherefore, the Debtor respectfully requests the entry of an order granting the relief

requested herein, and granting such other and further relief as is just and proper.

Respectfully Submitted,

Spybar Management LLC,
          Debtor herein.

By:     /s/ E. Philip Groben
        One of its Attorneys

E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
Matthew T. Gensburg (ARDC# 6187247)
Email: mgensburg@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
Fax:  312-263-2242