UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | | |
|---|---|---|
| In Re:<br>Spybar Management, LLC<br><br><br><br><br><br>Debtor(s) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | BK No.: 19-05128<br><br>Chapter: 11<br>Honorable Carol A. Doyle |

**FINAL ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND
GRANTING ADEQUATE PROTECTION AND RELATED RELIEF**

THIS MATTER came to be heard on the Emergency Motion of Spybar Management, LLC for Interim Authorize to Use of Cash Collateral Pursuant to 11 U.S.C. §§ 363(c) and 363(e) and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Motion") filed by the debtor and debtos-in-possession in the above-captioned bankruptcy case ("Debtor"); the Court having determined that proper notice under the circumstances and as required by Rule 4001(b) of the Federal Rules of Bankruptcy Procedure was provided; the Debtor's use of cash collateral to cover the expenditures set forth on Exhibit A to the Motion is necessary to avoid immediate and irreparable harm to Debtor's estate pending a final hearing on the Motion; and that the adequate protection proposed by the Debtor to be provided to the Debtor's lender(s) is sufficient to cover any projected diminution in value during the Budget period; and the Court having considered the representations and acknowledgments of the Debtor, as set forth below, along with the pleadings, arguments of counsel, and evidence;

THE COURT HEREBY FINDS THE FOLLOWING:

A. On February 27, 2019 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

B. The Debtor is in possession of its property and continues to operate and manage its business as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

C. This Court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). Venue of this bankruptcy case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

D. The proposed adequate protection to Byline Bank is proposed in good faith and sufficient to cover any projected diminution in value to the Byline Bank's pre-Petition Date collateral, if any, during the Budget period.

E. The operating expenses proposed to be paid by the Debtor, as represented in the Budget (defined below), are reasonable and necessary to prevent irreparable injury, loss, or damage to Debtor's estate. This Court concludes that entry of this Final Order is in the best interests of the estate at this time because its implementation will, among other things, allow for the continued operation of the Debtor's existing business and preservation of value for all constituents.

G. At the present time, the Debtor has a need for cash in order to fund working capital, operating

expenses, fixed charges, payroll, and other general corporate purposes arising in the Debtor's ordinary course of business, each as necessary for the orderly maintenance and operation of the Debtor's businesses as going concerns.

ACCORDINGLY, IT IS HEREBY ORDERED:

1. Use of Cash Collateral. The Debtor is authorized to use the Byline Bank's cash collateral in accordance with the budget attached hereto as Exhibit A (the "Budget"); provided, however, total disbursements under the Budget may not exceed 10% on a line-item cumulative basis over a 4 week term (the "Budget Variance"). The Debtor shall submit a variance report to Byline Bank within 21 days of the end of each monthly post petition period. The Debtor is authorized to use the Byline Bank's cash collateral to fund working capital, operating expenses, fixed charges, payroll, and all other general corporate purposes arising in the Debtor's ordinary course of business only as shown on the Budget. Nothing in this Order prevents Byline Bank from consenting to the use of cash collateral for the payment of ordinary-course postpetition expenses of the estate.

2. Adequate Protection. The adequate protection provided to the Byline Bank in this Order is only to the extent that the Byline Bank's asserted liens and security interests in the Debtor's pre-Petition Date property are perfected, valid, and not avoidable as of the Petition Date. Subject to the Court so finding, the following adequate protection ("Adequate Protection") is provided to the Byline Bank as adequate protection of the Byline Bank's asserted pre-Petition Date security interests in the Debtor's pre-Petition Date collateral.

a. From the Petition Date until such time as the Debtor no longer uses Byline Bank's Cash Collateral, the Debtor shall deliver to the Byline Bank the adequate protection payments detailed in their first interim cash collateral budget.

b. Byline Bank is hereby granted, from and after the Petition Date, replacement liens and security interests in all of the Debtor's assets, including, without limitation, all accounts, receivables, goods, contract rights and chattel paper acquired by the Debtor after the Petition Date, specifically including all cash proceeds arising from such accounts receivables, goods, contract rights and chattel paper acquired by the Debtor after the Petition Date, in the same nature, extent, priority, and validity that such liens, if any, existed on the Petition Date in the amount equal to the aggregate diminution in value of the prepetition collateral to the extent of their interests therein.

c. Notwithstanding the foregoing, this Final Order shall be deemed a security agreement and may be filed as a financing statement and the Debtor shall execute and deliver such notes, security agreements, assignments, financing statements and other documents that the Byline Bank shall reasonably request to further evidence the liens and security interests granted hereby.

d. Byline Bank shall have all the rights and remedies of a secured creditor in connection with the liens and security interests granted by this Order, except to the extent that such rights and remedies may be affected by the Bankruptcy Code, or otherwise.

3. Events of Default. The following shall constitute events of default under this Order ("Events of Default"):

a. If the Debtor exceeds the Budget Variances without the prior written consent of Byline Bank or further authority from the Court;

b. If the Debtor pays obligations not shown on the Budget without the prior written consent of the Byline Bank or further authority from the Court;

c. If any representation made by the Debtor after the commencement of this Chapter 11 case in any report or financial statement delivered to the Byline Bank proves to have been false or misleading in any material respect as of the time when made or given (including by omission of material information necessary to make such representation, warranty or statement not misleading);

    d. If a trustee or examiner, with authority to affect the operation of the Debtor's business, is appointed in the Debtor's Chapter 11 proceedings without the Byline Bank's consent;

    e. If this case is converted to a case under Chapter 7; or

    f. If this case is dismissed..

Failure of the Debtor to make payment(s) to Byline Bank as set forth in the Budget, and upon written notice from Byline Bank withdrawing consent to use Cash Collateral as a result, Debtor shall schedule a hearing with the Court seeking leave to continue use of cash collateral.

    4. Remedies Upon Default. Byline Bank shall be entitled to a hearing after three (3) business-days' notice (subject to the Court's availability) regarding the existence and continuation of an Event of Default. The purpose of such expedited hearing is for the Court to decide whether or not such an Event of Default exists and constitutes "cause" within the meaning of Section 362(d)(1) of the Bankruptcy Code; provided, however, Byline Bank is required to file a motion to seek such a hearing prior to noon (CST); if such motion is filed after noon (CST), then Byline Bank shall be entitled to a hearing on four (4) business days' notice. At such hearing, Byline Bank shall be entitled to seek any of the following relief with respect to the Debtor:

    a. the immediate termination of the Debtor's use of the requesting Byline Bank's cash collateral;

    b. the lifting of the automatic stay under 11 U.S.C. §362 permitting the requesting Byline Bank to take possession of all or any part of the requesting Byline Bank's collateral;

    c. the entry of an order prohibiting or limiting the Debtor's further use of Byline Bank's cash collateral; and

    d. such further or other relief as provided in the Bankruptcy Code, this Order or applicable non-bankruptcy law.

    5. Term. The Debtor's right to use the Byline Bank's cash collateral hereunder shall continue hereunder unless terminated hereunder by the terms of this Order or by further order of this Court.

    6. Notice of the Final Hearing has been given to all parties in interest to this matter.

    7. Notices. Except as otherwise stated herein, all notices and demands hereunder shall be in writing and shall be deemed given when addressed as follows: on the earlier of (a) when they are actually delivered to the addressees by hand delivery, facsimile transmission, e-mail or otherwise, or (b) at 11:00 a.m. Chicago time on the Banking Day next following the deposit thereof with any recognized national overnight delivery service properly addressed to the addressees.

    If to Debtor:
E. Philip Groben
Gensburg Calandriello & Kanter, P.C.
200 West Adams St., Ste. 2425
Chicago, IL 60606
Fax: (312) 263-2242
E-mail: pgroben@gcklegal.com

    If to Byline Bank:
Paulina Garga-Chmiel
Chuhak & Tecson, P.C.
30 S. Wacker Dr., Ste. 2600
Chicago, IL 60606
Fax: (312) 444-9027
Email: pgarga@chuhak.com

8. The findings of fact and conclusions of law of this Court pursuant to this Final Order shall be deemed effective upon the entry of this Order. To the extent that such findings may constitute conclusions, and vice versa, they hereby are deemed such.

9. This Final Order is immediately valid and fully effective upon its entry by the Court.

Enter:

Honorable Carol A. Doyle
United States Bankruptcy Judge

Dated: April 18, 2019

**Prepared by:**

E. Phillip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
Matthew T. Gensburg (ARDC# 6187247)
Email: mgensburg@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Telephone: (312) 263-2200
Facsimile: (312) 263-2242

Spybar Management, LLC Cash Collateral Budget
March 13, 2019

| Period Ending | 1 ACTUAL 3-Mar | 2 ACTUAL 10-Mar | 3 FRCST 17-Mar | 4 FRCST 24-Mar | 5 FRCST 31-Mar | 6 FRCST 7-Apr | 7 FRCST 14-Apr | 8 FRCST 21-Apr | 9 FRCST 28-Apr | 10 FRCST 5-May | 11 FRCST 12-May | 12 FRCST 19-May | 13 FRCST 26-May |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Cash on Hand | 4,713.89 | 44,738.67 | 38,230.83 | 38,566.17 | 44,211.58 | 53,926.92 | 53,347.33 | 51,432.67 | 59,928.08 | 76,568.41 | 71,038.82 | 80,074.16 | 85,044.57 |
| **Cash Receipts:** | | | | | | | | | | | | | |
| Sales Receipts | 26,755.43 | 25,712.81 | 33,000.00 | 33,000.00 | 33,000.00 | 33,000.00 | 33,000.00 | 33,000.00 | 33,000.00 | 33,000.00 | 33,000.00 | 33,000.00 | 33,000.00 |
| Door | 5,635.00 | 7,785.00 | 6,626.88 | 6,626.88 | 6,626.88 | 6,626.88 | 6,626.88 | 6,626.88 | 6,626.88 | 6,626.88 | 6,626.88 | 6,626.88 | 6,626.88 |
| Ticketing | 2,045.00 | 2,990.00 | 3,830.77 | 3,830.77 | 3,830.77 | 3,830.77 | 3,830.77 | 3,830.77 | 3,830.77 | 3,830.77 | 3,830.77 | 3,830.77 | 3,830.77 |
| Release of IDOR Levy | 33,844.78 | | | | | | | | | | | | |
| **Total Operating Receipts:** | 68,280.21 | 36,487.81 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 |
| **Operating Disbursements:** | | | | | | | | | | | | | |
| Payroll / T&F | (7,460.25) | (8,996.18) | (8,772.31) | (8,772.31) | (8,772.31) | (8,772.31) | (8,772.31) | (8,772.31) | (8,772.31) | (8,772.31) | (8,772.31) | (8,772.31) | (8,772.31) |
| Payroll and Payroll tax | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) | (1,500.00) |
| Credit Card Processing Fees | | | | | (2,000.00) | | | | (2,000.00) | | | | |
| Liquor Costs | (3,130.75) | (8,575.87) | (7,500.00) | (7,500.00) | (7,500.00) | (7,500.00) | (7,500.00) | (7,500.00) | (7,500.00) | (7,500.00) | (7,500.00) | (7,500.00) | (7,500.00) |
| Sales & Use Tax - ST1 / ST4* | | | (11,500.00) | | | | (16,600.00) | | | | | (13,500.00) | |
| Sales Tax Installment Plan* | | | (7,500.00) | | (7,500.00) | | | | | (7,500.00) | | | |
| Insurance | | (6,000.00) | | | | | (6,000.00) | | | | (6,000.00) | | |
| Waste MGMT | | | | (650.00) | | | | | (650.00) | | | | (650.00) |
| ComEd | | | | (675.00) | | | | | (675.00) | | | | (675.00) |
| Phone and Internet | | | | (350.00) | | | | | (350.00) | | | | (350.00) |
| Pest Control | | (146.00) | | (150.00) | | | | | (150.00) | | | | (150.00) |
| Transform | | | | | | (800.00) | | | | | | | |
| Advertising and Promotions | | | | (1,000.00) | | | | (1,000.00) | | | (800.00) | | |
| Graphics | | | | | (1,000.00) | | | | | (1,000.00) | | (1,000.00) | |
| Rent / Lease | (16,025.00) | | | | | (16,000.00) | | | | (16,000.00) | | | |
| Sound System lease | | | | | | (3,000.00) | | | | | (3,000.00) | | |
| Artist costs | (6,973.24) | (3,307.29) | (7,000.00) | (9,500.00) | (5,250.00) | (5,250.00) | (5,000.00) | (7,500.00) | (5,000.00) | (5,500.00) | (7,500.00) | (5,000.00) | (10,000.00) |
| Byline Bank Adequate Protection | | | | (6,500.00) | | | | (6,500.00) | | | | | (6,500.00) |
| Payroll Services | | | | | (220.00) | | | | (220.00) | | | | (220.00) |
| UST Quarterly Fees | | | | | | | | (1,625.00) | | | | | |
| Cleaning Services | | (1,214.93) | | (1,214.93) | | (1,214.93) | | (1,214.93) | | (1,214.93) | | (1,214.93) | |
| Ordinary Course Accounting - Passarelli | | | 650.00 | | | | | 650.00 | | | 650.00 | | |
| Restructuring Professionals | | | | | | | | | | | | | |
| **Total Operating Receipts** | 68,280.21 | 36,487.81 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 | 43,457.65 |
| **Total Operating Disbursements** | (35,089.24) | (30,340.27) | (43,122.31) | (37,812.24) | (33,742.31) | (44,037.24) | (45,372.31) | (34,962.24) | (26,817.31) | (48,987.24) | (34,422.31) | (38,487.24) | (36,317.31) |
| **Operating Cash Flow** | 33,190.97 | 6,147.54 | 335.34 | 5,645.41 | 9,715.34 | (579.59) | (1,914.66) | 8,495.41 | 16,640.34 | (5,529.59) | 9,035.34 | 4,970.41 | 7,140.34 |
| **Ending Cash on Hand** | 44,738.67 | 38,230.83 | 38,566.17 | 44,211.58 | 53,926.92 | 53,347.33 | 51,432.67 | 59,928.08 | 76,568.41 | 71,038.82 | 80,074.16 | 85,044.57 | 92,184.91 |

* Debts owed to Illinois Department of Revenue by Skyline Management Co. but which are being paid for through Spybar Management, LLC operations subject to approval by the bankruptcy court.