# Exhibit A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| Spybar Management, LLC | Case No. 19-05128 |
| Debtor. | Hon. Carol A. Doyle |

## AMENDED PLAN OF REORGANIZATION

     This Amended Plan of Reorganization ("**Plan**") is filed by Spybar Management, LLC (the "**Debtor**"), Debtor and Debtor in Possession, pursuant to Title 11 of the United States Code, § 1121(a), on _____, 2019. The Plan is a not a liquidating plan, and requires the Debtor to pay 100% of the allowed claims of secured, priority and unsecured creditors.

     All holders of claims entitled to vote on the Plan are encouraged to read the plan and the Amended Disclosure Statement in their entirety before voting to accept or reject the Plan.

## CONTENTS

**ARTICLE I:** DEFINED TERMS AND RULES OF CONSTRUCTION ........................................................................3
   1.01    Defined Terms. ........................................................................... 3
   1.02    Rules of Construction ................................................................. 7
**ARTICLE II:** ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS .................................................8
   2.01    Administrative Expense Claims....................................................... 8
   2.02    Professional Claims ....................................................................... 8
   2.03    Priority Tax Claims......................................................................... 8
**ARTICLE III:** CLASSIFICATION OF CLAIMS.........................................................................8
   3.00    Classification in General................................................................ 8
   3.01    Summary of Classification ............................................................ 9
   3.02    Elimination of Vacant Classes ...................................................... 9
   3.03    Voting Classes; Presumed Acceptance by non-voting classes .................... 9
   3.04    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code 9
   3.05    Each Impaired Class Entitled to Vote Separately .......................................... 10
   3.06    Presumed Acceptance of Plan by Unimpaired Classes............................... 10
   3.07    Impairment Controversies............................................................ 10
**ARTICLE IV:** TREATMENT OF CLAIMS AND INTERESTS.........................................................10
   4.00    Treatment. ................................................................................. 10
   4.01    Secured Claim of Byline Bank (Class I).................................................... 10
   4.02    Unsecured Claims Entitled to Priority (Class II). ...................................... 12
   4.03    General Unsecured Claims (Class III). .................................................... 12
   4.04    Unsecured Claims of $1,500 or less (Class IV)........................................ 12
   4.05    Claims held by Insiders (Class V). .......................................................... 13

| | | |
|---|---|---|
| 4.06 | Existing Debtor Equity Interests (Class VI). | 13 |
| **ARTICLE V:** | ALLOWANCE AND DISALLOWANCE OF CLAIMS | **13** |
| 5.01 | Deadline for Claim Objections | 13 |
| 5.02 | Disputed Claims | 14 |
| 5.03 | Delay of Distribution on a Disputed Claim | 14 |
| 5.04 | Settlement of Disputed Claims | 14 |
| 5.05 | Estimated Claims | 14 |
| **ARTICLE VI:** | IMPLEMENTATION OF THE PLAN | **14** |
| 6.01 | Management, Ownership, Operations. | 14 |
| 6.02 | Funding | 14 |
| 6.03 | Surrender of Assets | 15 |
| 6.04 | Distribution to Creditors | 15 |
| 6.05 | Disputed Non-Tax Claims | 15 |
| 6.06 | Disputed Tax Claims | 15 |
| 6.07 | Reporting | 15 |
| 6.08 | Entry of Final Decree | 15 |
| **ARTICLE VII:** | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | **15** |
| 7.1 | Assumption or Rejection of Executory Contracts and Unexpired Leases | 15 |
| 7.2 | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 16 |
| 7.3 | Claims Based on Rejection of Executory Contracts and Unexpired Leases | 17 |
| 7.5 | Insurance Policies | 17 |
| 7.6 | Reservation of Rights. | 17 |
| **ARTICLE VIII:** | EFFECTS OF CONFIRMATION AND PERFORMANCE | **18** |
| 8.01 | Binding Effect | 18 |
| 8.02 | Vesting of Assets | 18 |
| 8.03 | Continuation of Security Interests | 18 |
| 8.04 | Exculpation from Liability | 18 |
| 8.05 | Release: Except as otherwise provided for in the Plan, | 18 |
| 8.06 | General Injunction | 19 |
| 8.07 | Term of Certain Injunctions and Automatic Stay | 19 |
| 8.08 | No Liability for Tax Claims | 19 |
| 8.09 | Regulatory or Enforcement Actions | 20 |
| 8.10 | Solicitation of Plan | 20 |
| **ARTICLE IX:** | TRANSFERS OF CLAIMS | **20** |
| **ARTICLE X:** | RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR OR TO THE ESTATE | **20** |
| 10.01 | Retention of Rights to Pursue Cases of Action | 20 |
| 10.03 | Allowance of Claims and Interests. | 21 |
| 10.04 | Administration of Claims and Interests. | 21 |
| **ARTICLE XI:** | MODIFICATION OF THE PLAN | **21** |
| **ARTICLE XII:** | JURISDICTION OF THE COURT | **22** |
| 12.1 | Retention of Jurisdiction | 22 |
| 12.2 | Consent to Jurisdiction | 22 |
| **ARTICLE XIII:** | MISCELLANEOUS PROVISIONS | **22** |
| 13.1 | Revocation or Withdrawal of the Plan | 22 |
| 13.2 | Further Assurances. | 23 |
| 13.3 | Headings | 23 |
| 13.4 | Notices | 23 |

Spybar Management, LLC
Amended Plan of Reorganization

| 13.5 | Sufficiency of Notice | 23 |
| 13.6 | Governing Law | 23 |
| 13.7 | Limitation on Allowance | 23 |
| 13.8 | Setoffs | 23 |
| 13.9 | Successors and Assigns | 24 |
| 13.10 | Modification of Payment Terms | 24 |
| 13.11 | Entire Agreement | 24 |
| 13.12 | Severability of Plan Provisions | 24 |
| 13.13 | Controlling Document | 24 |
| 13.14 | Plan Supplement | 24 |
| 13.15 | Substantial Consummation | 25 |
| **ARTICLE XIV:** | <u>CONFIRMATION OF THE PLAN</u> | **25** |
| 14.01 | Conditions to Confirmation | 25 |
| 14.01 | Compliance with 11 U.S.C. § 1129(a) | 25 |

## ARTICLE I:
## <u>DEFINED TERMS AND RULES OF CONSTRUCTION</u>

 **1.01 Defined Terms.** As used in the Plan, the capitalized terms below have the following meanings, except as expressly provided or unless the context otherwise requires.  Any term used but not defined in the Plan, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code of the Bankruptcy Rules.

 "**Administrative Expense Claim**" means (a) any cost or expense of administration of the Bankruptcy Case under Section 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, motion, request or other Bankruptcy Court-approved pleading seeking such expense in the Bankruptcy Case, including (i) any actual and necessary costs and expenses of preserving the Estate or operating the businesses of the Debtor (including wages, salaries, or commissions for services rendered) incurred on or after the Petition Date, (ii) any Postpetition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its businesses, (iii) any Claim granted administrative priority status by a Final Order of the Bankruptcy Court, (iv) any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period, and (v) compensation or reimbursement of expenses of Professionals awarded or allowed pursuant to an order of the Bankruptcy Court under Section 330(a) or 331 of the Bankruptcy Code (including any amounts held back pursuant to an order of the Bankruptcy Court); (b) all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code, 28 U.S.C. §§ 1911-1930; and (c) any and all other costs or expenses of administration of the Bankruptcy Case that are allowed by a Final Order of the Bankruptcy Court; provided, however, that, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any Cure Claim, any Disallowed Claim, or, unless otherwise expressly provided in the Plan, any of the Claims in Classes I through VI.  In no event shall any Claim set out in a Proof of Claim be deemed to be an Administrative Expense (except for any Claim by a Governmental Unit for taxes (and for interest and/or penalties related to such taxes) due from the Debtor for any Postpetition tax year or period).

"**Allowance Date**" means date an order of Court allowing a Claim in this Chapter 11 case has become Final Order.

"**Allowed**" means, with reference to any Claim, a Claim (a) arising on or before the Effective Date as to which (i) no objection to allowance or priority, and no request for estimation or other challenge, including, without limitation, pursuant to section 502(d) of the Bankruptcy Code or otherwise, has been interposed and not withdrawn within the applicable period fixed by the Plan or applicable law, or (ii) any objection has been determined in favor of the holder of the Claim by a Final Order; (b) that is compromised, settled, or otherwise resolved pursuant to the authority of the Debtor; (c) as to which the liability of the Debtor and the amount thereof are determined by a Final Order of a court of competent jurisdiction; or (d) expressly allowed hereunder.

"**Bankruptcy Code**" means Title 11 of the United States Code 11 U.S.C. § 101 et seq. and amendments thereto.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, promulgated pursuant to Section 2075 of the Judicial Code and the general, local, and chambers rules and standing orders of the Court.

"**Bar Date**" means April 28, 2019, or for Governmental Units August 26, 2019.

"**Case**" means the chapter 11 case of Spybar Management, LLC, initiated as a voluntary chapter 11 case under the Bankruptcy Code by the Debtor on February 27, 2019.

"**Cause of Action**" means any and all actions, claims, demands, rights, defenses, counterclaims, suits and causes of action of the Debtor or its Estate, whether known or unknown, in law, equity or otherwise, against any Creditor or other third party, including (a) actions to avoid or recover a transfer of Property of the Debtor's Estate or an interest of the Debtor in Property under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Section 542, 544, 545, 548, 549, 550, 551, or 553 of the Bankruptcy Code or under any other similar applicable federal, state or common law, and (b) actions against any officer, manager or member of the Debtor related to any prepetition dissipation of corporate assets, and (c) any and all other claims or rights or proceedings of any value whatsoever, at law or in equity, turnover actions and claims of the type referred to in the Disclosure Statement.  When used in the Plan, the term "Causes of Action" shall not include any claims, obligations, suits, judgments, damages, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities released or waived by the Debtor or its Estate pursuant to a Final Order of the Bankruptcy Court.

"**Claims**" has the meaning ascribed to such term in Section 101(5) of the Bankruptcy Code. Notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Claim" shall be given the broadest possible meaning permitted by applicable law and shall include all manner and type of claim, whenever and wherever such claim may arise.

"**Confirmation Date**" means the date of the entry by the Court of an order confirming the Plan.

"**Court**" means the United States Bankruptcy Court, a unit of the United States District Court, for the Northern District of Illinois, Eastern Division ("**Bankruptcy Court**"), including the United States Bankruptcy Judge presiding in this case or, as appropriate or required, the United States District Court for said District and Division ("**District Court**"), and any Court having competent jurisdiction to hear appeals therefrom.

"**Creditors**" means all persons and entities holding or purporting to hold claims. Creditors shall include Secured Creditors.

"**Cure Claim**" means any Claim of any nature whatsoever, including any Claim for any cure payment, cost or other amount, if any, pursuant to Section 365(b) of the Bankruptcy Code or otherwise and any Claim for a default (monetary or non- monetary), arising from, relating to or in connection with the assumption by the Debtor of any Assumed Contract under the Plan (provided such Claim is filed with the Bankruptcy Court by the Cure Claim Submission Deadline).

"**Cure Claim Submission Deadline**" means that date established in Section 7.2 of the Plan.

"**Debtor**" means Spybar Management, LLC.

"**Disclosure Statement**" means the Debtor's Disclosure Statement, filed concurrently with the Plan.

"**Effective Date**" means the date on which the order confirming the Plan becomes a Final Order.

"**Estate**" means the estate created for the Debtor by Section 541 of the Bankruptcy Code upon commencement of the Bankruptcy Case.

"**Equity Interest**" means the membership interests in the Debtor outstanding as of the Petition Date.

"**Exculpated Party**" means collectively the Debtor, the Debtor's postpetition officers and directors, and the Professionals for the Debtor.

"**Executory Contract**" means a contract or lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 or 1123 of the Code.

"**Final Order**" means (a) an order, judgment, ruling or other decree (or any revision, modification or amendment thereto) issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Bankruptcy Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and as to which (i) no appeal, petition for review, reargument, rehearing, reconsideration or certiorari has been taken and is pending and the time for the filing of any such appeal, petition for review, reargument, rehearing,

reconsideration or certiorari has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; or (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

"**Governmental Unit**" has the meaning ascribed to such term in Section 101(27) of the Bankruptcy Code.

"**Holder**" means an entity holding a Claim or Equity Interest, as applicable.

"**Intercompany Claim**" means any pre- or postpetition Claim against the Debtor held by a non-Debtor affiliate.

"**Insider**" means any director of the Debtor, officer of the Debtor, person in control of the Debtor, partnership in which the Debtor is a general partner, general partner of the Debtor or relative of a general partner, director, officer, or person in control of the Debtor.

"**Insider Claim**" means every Claim of every Insider except Claims found upon a right of subrogation, exoneration or contribution for payment by an Insider of all or part of an Allowed Claim of a Creditor other than an Insider.

"**Interest**" Unless otherwise expressly stated in the Plan, interest shall mean simple interest at the specified annual rate. Where daily calculations are applicable or appropriate, the per diem rate shall be calculated on the basis of the number of days in the actual calendar year or month as the case may be.

"**Judicial Code**" means Title 28 of the United States Core, 28 U.S.C. §§ 1-4001.

"**Petition Date**" is February 27, 2019.

"**Plan**" means this Plan of Reorganization, and all exhibits attached hereto as it may be modified, supplemented, or amended from time to time.

"**Plan Documents**" means all documents that aid in effectuating the Plan.

"**Plan Supplement**" means exclusively the supplement filed by Debtor listing executory contracts to be assumed or rejected by the Debtor, which may include cure costs, if any. The Plan Supplement shall not otherwise amend or modify the Plan.

"**Priority Claim**" means an Allowed Claim other than an Allowed Administrative Claim or an Allowed Priority Tax Claim to the extent that the Court determines that such claim is entitled to priority treatment under § 507 of the Code.

"**Priority Tax Claim**" means a Claim entitled to or purportedly entitled to priority pursuant to § 507(a)(8) of the Code.

"**Professional**" means any professional employed in the Bankruptcy Case pursuant to an order of the Bankruptcy Court, pursuant to Sections 327 or 1103 of the Bankruptcy Code.

"**Professional Claim**" means a Claim for professional services rendered or costs incurred on or after the Petition Date through the Effective Date by professional persons retained by the Debtor by an order of the Bankruptcy Court pursuant to sections 327, 328, 329, 330, 331, or 503(b) of the Bankruptcy Code.

"**Proof of Claim**" means a proof of claim filed with the Bankruptcy Court with respect to a Claim against the Debtor pursuant to Bankruptcy Rules 3001, 3002, or 3003.

"**Released Parties**" the Debtor and the Debtor's bankruptcy estate.

"**Reorganized Debtor**" means the Debtor as reorganized as of the Effective Date.

"**Secured Claim**" means any Claim of a Creditor that is (a) secured in whole or in part, as of the Petition Date, by a Lien (i) on property of the Estate and (ii) which is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or (b) subject to setoff under Section 553 of the Bankruptcy Code, but, with respect to both (a) and (b) above, only to the extent of the value of such Creditor's interest in the Estate's interest in such Collateral or the amount subject to setoff, as the case may be. Except as otherwise provided in the Plan, if the value of a Creditor's interest in the Estate's interest in such Collateral or the amount subject to setoff is less than the amount of the Allowed Claim, then such deficiency shall constitute an Unsecured Claim.

"**Secured Creditor**" means a Creditor having an Allowed Secured Claim.

**1.02    Rules of Construction**.  For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in the Plan to a contract, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that such contract, instrument, release, indenture or other agreement or document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or Exhibit means such document or Exhibit as may be amended, modified or supplemented; (d) if the Plan's description of the terms of an Exhibit is inconsistent with the terms of the Exhibit, the terms of the Exhibit shall control; (e) unless otherwise specified, all references in the Plan to Articles and Exhibits are references to Articles and Exhibits of or to the Plan; (f) unless the context requires otherwise, the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular Article or section or subsection of the Plan; (g) any phrase containing the term "include" or "including" shall mean including without limitation; (h) all of the Exhibits referred to in the Plan shall be deemed incorporated herein by any such reference and made a part hereof for all purposes; (i) any reference to an entity as a Holder of a Claim or Equity Interest includes that entity's successors and assigns; and (j) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply in the construction of the Plan, to the extent such rules are not inconsistent with any other provision in this Section.

## ARTICLE II:
### ADMINISTRATIVE EXPENSE AND PRIORITY CLAIMS

**2.01    Administrative Expense Claims**.  Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, each Holder of an Allowed Administrative Expense Claim (other than a Professional Claim) shall receive, in final satisfaction, settlement, release, and discharge of such Claim cash in an amount equal to such Allowed Administrative Expense Claim on the latest of (i) the Effective Date or (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim,

**2.02    Professional Claims**.  Allowed Professional Claims shall be paid in full, in Cash, by the Debtor in such amounts as are Allowed by the Bankruptcy Court (i) on the date upon which an order relating to any such Allowed Professional Claim is entered or as soon as reasonably practicable thereafter; or (ii) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Claim and the Debtor.  Notwithstanding the foregoing, any Professional Claims that are authorized to be paid pursuant to any administrative orders entered by the Bankruptcy Court may be paid at the times and in the amounts authorized pursuant to such orders.

**2.03    Priority Tax Claims**. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, settlement, release, and discharge of such Allowed Priority Tax Claim at the election of the Debtor, either (a) Cash in an amount equal to such Allowed Priority Tax Claim on the latest of (i) the Effective Date, to the extent such Claim is an Allowed Priority Tax Claim on the Effective Date; (ii) the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; or (b) equal annual Cash payments in an aggregate amount equal to the amount of such Allowed Priority Tax Claim, together with interest at the applicable rate under section 511 of the Bankruptcy Code, over a period not exceeding five (5) years from and after the Petition Date; provided, that the Debtor reserves the right to prepay all or a portion of any such amounts at any time under this option without penalty or premium.

**Entry of a Confirmation Order will operate as an injunction against the commencement or continuation of an action, the employment of process, or any act to collect, recover or offset any Priority Tax Claim of any Holder against the Garrett Belschner or Dino Gardiakos, and said injunction shall be effective so long as the Reorganized Debtor is performing its obligations under the Plan, and no Default has occurred and remains uncured.**

## ARTICLE III:
### CLASSIFICATION OF CLAIMS

**3.00    Classification in General**.  A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and Distribution under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code; provided, that a Claim or Interest is placed in a

particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Allowed Claim or Allowed Interest has not been satisfied, released, or otherwise settled prior to the Effective Date.

**3.01    Summary of Classification**.  The following table designates the Classes of Claims against and Interests in the Debtor and specifies which of those Classes are (a) Impaired or Unimpaired by the Plan and (b) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Claims, and Priority Tax Claims have not been classified.

| Class | Claim or Interest Type | Impairment | Entitled to Vote |
|-------|------------------------|------------|------------------|
| Class I | Secured Claims | Impaired | Yes |
| Class II | Unsecured Claims entitled to Priority | Impaired | Yes |
| Class III | General Unsecured Claims | Impaired | Yes |
| Class IV | Unsecured Claims of $1,500 or less | Impaired | Yes |
| Class V | Claims held by Insiders | Impaired | Yes |
| Class VI | Equity Interests | Not Impaired | No (presumed to accept) |

**3.02    Elimination of Vacant Classes**: Any Class of Claims against, or Interests in the Debtor that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of voting to accept or reject the Plan, and disregarded for purposes of determining whether the plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to that Class.

**3.03    Voting Classes; Presumed Acceptance by non-voting classes**: If no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Debtor shall request the Bankruptcy Court at the Confirmation Hearing to deem to Plan accepted by the holders of such Claims in such Class.

**3.04    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code.** The Debtor shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests. The Debtor reserves the right to modify the Plan in consultation with parties in interest to this proceeding, to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims.

**3.05    Each Impaired Class Entitled to Vote Separately**.  Holders of Claims in each Impaired Class of Claims shall be entitled to vote separately to accept or reject the Plan.  Pursuant to Section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if (a) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated pursuant to Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.  If a Holder of a Claim holds more than one Claim in any one Class, all Claims of such Holder in such Class shall be aggregated and deemed to be one Claim for purposes of determining the number of Claims in such Class voting on the Plan.

**3.06    Presumed Acceptance of Plan by Unimpaired Classes**. Pursuant to Section 1126(f) of the Bankruptcy Code, Holders of Claims in such Classes which are unimpaired by the Plan are conclusively presumed to have accepted the Plan and, thus, are not entitled to vote on the Plan.  Accordingly, votes of Holders of Claims in Classes which are unimpaired by the Plan are not being solicited by the Debtor.  Except as otherwise expressly provided in the Plan, nothing contained herein or otherwise shall affect the rights and legal and equitable claims or defenses of the Debtor in respect of any Unimpaired Claims, including all rights in respect of legal and equitable defenses to setoffs or recoupments against Unimpaired Claims.

**3.07    Impairment Controversies**.  If a controversy arises as to whether any Claim or Equity Interest, or any Class of Claims or Class of Equity Interests, is Impaired under the Plan, such Claim, Equity Interest or Class shall be treated as specified in the Plan unless the Bankruptcy Court shall determine such controversy upon motion of the party challenging the characterization of a particular Claim or Equity Interest, or a particular Class of Claims or Class of Equity Interests, under the Plan.

**ARTICLE IV:**
<u>TREATMENT OF CLAIMS AND INTERESTS</u>

**4.00    Treatment.** Claims and Equity Interests shall be treated under the Plan in the manner set forth in this Article IV.

**4.01    Secured Claim of Byline Bank (Class I).**

(a) Classification: Class I consists of the Secured Claim of Byline Bank.

(b) Treatment: The Class I claim of Byline Bank shall be satisfied by deferred cash payments made by the Debtor in an amount equal to Byline Bank's Allowed Secured Claim.

For purposes of clarity and avoidance of doubt, the Proof of Claim filed by Byline Bank on March 25, 2019 as Claim No. 4-1 in the amount of $485,708.95 is deemed to be an Allowed Secured Claim, including accrued interest, reasonable fees and costs through the Effective Date less payments made by the Debtor since the Petition Date ("**Byline Bank Allowed Secured Claim**").

The Byline Bank Allowed Secured Claim shall be paid in full in sixty (60) monthly installments of principal and interest, based on a five (5) year amortization period.  The first payment shall be made on the first day of the first month that begins no less then twenty-one days after the Effective Date.  Subsequent payments shall be made on the first day of each succeeding month thereafter.  For purposes of the Plan, interest on Byline Bank's Class I Claim shall be at the rate of seven and one half percent (7.5%).  Prior to the Effective Date of the Plan, the Debtor shall remain obligated to pay Byline Bank adequate protection payments as required under the final cash collateral order entered in the Bankruptcy Case.

The Property securing Byline Bank's Class I secured Claim may not be transferred, sold, or refinanced, unless the Byline Bank Allowed Secured Claim is paid in full or with written consent of Byline Bank.  The Allowed Secured Claim of Byline Bank may be prepaid pursuant to the terms of the Byline Bank loan documents.

In all other respects, the rights and obligations of the Debtor and Byline Bank under their loan documents shall remain the same and shall govern, including, but not limited to, the security interest of Byline Bank in certain assets of the Debtor.  On or before the Effective Date, the Debtor and Byline Bank shall enter in to an amendment of their loan documents incorporating the terms set forth above and including a provision which shall require that in the event that the Debtor fails to make any payment when due thereunder ("**Payment Default**"), the Debtor shall not be in default under the amended loan documents unless the Debtor is given an opportunity to cure said Payment Default within fifteen (15) days after receipt of written notice of the default.  For any other default under the terms of the Plan, the rights and remedies of the parties shall be governed by the loan documents.

**Entry of a Confirmation Order will operate as an injunction against the commencement or continuation of an action, the employment of process, or any act to collect, recover or offset any Class I Claim of any Holder against the Garrett Belschner or Dino Gardiakos, and said injunction shall be effective so long as the Reorganized Debtor is performing its obligations under the Plan, and no default has occurred and remains uncured pursuant to the terms of the loan documents, as amended herein.  Notwithstanding the foregoing, Garrett P. Belschner and Dino S. Gardiakos restate their Unconditional Guarantee with respect to the Byline Bank Allowed Secured Claim and remain obligated to pay all the amounts due to Byline Bank pursuant to the terms of the Unconditional Guarantee executed on September 18, 2013.**

In the event of a material default (including Payment Default) and failure to cure, the Plan injunction and/or automatic stay shall be immediately lifted and modified without further Order of the Court to permit Byline Bank to exercise its rights and remedies under the loan documents.

(c) Voting: Class I is Impaired, and, thus, the Holder of the Secured Claim of Byline Bank is entitled to vote to accept or reject the Plan.

**4.02    Unsecured Claims Entitled to Priority (Class II).**

(a) Classification: Class II consists of Unsecured Claims Entitled to Priority by the Bankruptcy Code, 11 U.S.C. § 507(a)(1)-(10), except Priority Tax Claims.

(b) Treatment: The Holders of Allowed Class II Unsecured Claims Entitled to Priority, to the extent their claims are Allowed and not previously paid, shall receive 100% of their Allowed Priority Claim in sixty (60) equal monthly installments, or pursuant to such other payment plan agreed to by the parties and approved by the Court.  The first payment shall be made on the first day of the first month that begins no less then twenty-one days after the Effective Date.  Subsequent payments shall be made on the first day of each succeeding month thereafter.

Funds to pay Class II claims will be drawn from the income of the Debtor and the Reorganized Debtor.  Notwithstanding anything herein to the contrary, the Class II Claim of any Claimant entitled to priority pursuant to 11 U.S.C. § 507(a)(4) is limited to $12,850.00 and a Class II Claim in excess of $12,850.00 shall be deemed a Class III Claim to the extent of such excess amount.

(c) Voting: Class II is Impaired and, thus, Holders of Unsecured Claims Entitled to Priority are entitled to vote to accept or reject the Plan.

**4.03    General Unsecured Claims (Class III).**

(a) Classification: Class III consists of General Unsecured Claims.

(b) Treatment: Holders of Allowed Class III General Unsecured Claims, to the extent their claims are Allowed and not previously paid, shall receive 100% of their Allowed Claim in forty-eight (48) equal monthly installments, or pursuant to such other payment plan agreed to by the parties and approved by the Court.  The first payment shall be made on the first day of the thirteenth month that begins no less then twenty-one days after the Effective Date.  Subsequent payments shall be made on the first day of each succeeding month thereafter.  Funds to pay Class III claims will be drawn from the income of the Debtor and Reorganized Debtor.

(c) Voting: Class III is Impaired and, thus, Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

**4.04    Unsecured Claims of $1,500 or less (Class IV).**

(a) Classification: Class IV consists of Unsecured Claims of a value of $1,500.00 or less, either originally or by election made in writing by a Creditor holding an Unsecured Claim Entitled to Priority or a General Unsecured Claim in excess of $1,500.00 to reduce any such Claim to $1,500.00 through appropriate notation on a ballot accepting or rejecting the Plan, and such an election shall be made no later than the date by which such ballots must be returned as fixed by the Bankruptcy Court.

(b) Treatment: Except to the extent that a holder of a Class IV Claim agrees to less

favorable treatment, in full and final satisfaction, settlement, release, and discharge of an Allowed Class IV Claim, each such holder thereof shall receive 100% of their Claim during the first ninety (90) days after the Plan Effective Date, or pursuant to such other payment plan agreed to by the parties and approved by the Court. Funds to pay Class IV claims will be drawn from the income of the Debtor and Reorganized Debtor.

(c) Voting: Class IV is Impaired and, thus, Holders of Unsecured Claims of $1,500.00 or Less are entitled to vote to accept or reject the Plan.

### 4.05    Claims held by Insiders (Class V).

(a) Classification: Class V consists of the Allowed Claims held by Debtor Insiders, including those claims held by Dino Gardiakos and Garrett Belschner.

(b) Treatment: On the Effective Date the Holders of Allowed Claims held by Insiders shall receive subordinated promissory notes in the amount of their Allowed Claim.  Payment on account of the promissory notes shall be subordinated to the right of payment to all Allowed Class I, II, III, and IV Claims, and for the avoidance of doubt, no payment on account of a subordinated promissory note may be made until all allowed Class I, II, III, and IV Claims have been paid in full.  Class V Claims shall not accrue interest

(c) Voting: Class V is Impaired and, thus, holders of Insider Claims are entitled to vote to accept or reject the Plan.

### 4.06    Existing Debtor Equity Interests (Class VI).

(a) Classification: Class VI consists of Existing Debtor Equity Interests.

(b) Treatment: The holders of all Class VI Equity Interests will receive no cash distribution under the plan, but will maintain an equity interest after confirmation in exchange for their agreement to subordinate their Class V Claims.  Distribution of the Class VI Equity Interests in the Reorganized Debtor will be as follows:

| Name | Interest in reorganized Debtor |
|------|-------------------------------|
| Garrett Belschner | 50% |
| Dino Gardiakos | 50% |

(c) Voting: Class VI is unimpaired and thus presumed to accept the Plan.  .

### ARTICLE V:
### ALLOWANCE AND DISALLOWANCE OF CLAIMS

**5.01    Deadline for Claim Objections**. The Debtor shall have the right to object to claims for 120 days after confirmation of the Plan, or if a Proof of Claim is filed after an Order of Confirmation is entered by the Court then for 120 days after the filing of the Proof of Claim.

**5.02   Disputed Claims**. A disputed claim is a claim that has not been Allowed or disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**5.03   Delay of Distribution on a Disputed Claim**. No distribution will be made on account of a disputed claim unless such claim is Allowed by a Final Order.

**5.04   Settlement of Disputed Claims**. The Debtor will have the power and authority to settle and compromise a disputed claim with Bankruptcy Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**5.05   Estimated Claims**. To the extent any Claim is estimated for any purpose other than for voting on the Plan, then in no event shall such Claim be Allowed in an amount greater than the estimated amount.

### ARTICLE VI:
### IMPLEMENTATION OF THE PLAN

**6.01   Management, Ownership, Operations**.

(a) During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate its business as a debtor-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code and Bankruptcy Rules.  The Debtor shall continue to exist after the Effective Date as a Reorganized Debtor in accordance with applicable laws of the jurisdiction in which it is organized and pursuant to its operating agreement. On or after the Effective Date, the Reorganized Debtor may, in its sole and absolute discretion, take such action as permitted by applicable law and the Reorganized Debtor's organizational documents, as the Reorganized Debtor may determine is reasonable and appropriate.

(b) After confirmation, the Debtor will continue to possess its personal assets and to manage its affairs. The Debtor shall have the right to develop its business, to negotiate and enter into contracts, incur new indebtedness, pursue litigation in an effort to provide a reasonable pro rata return to unsecured creditors, enter into partnerships and joint ventures, hire and fire professionals, and pay post-petition creditors on a current basis without further order of court.

(c)  On and after the Effective Date the Reorganized Debtor is authorized to, and may execute, deliver, file, or record such contracts, instruments, releases, and other agreement or documents, and take such action actions as may be necessary and appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan.

**6.02   Funding**.  Payments required under the Plan shall be made from pre-confirmation and post-confirmation earnings of the Debtor's and Reorganized Debtor's business.  The feasibility of the Plan is demonstrated by pro forma financial statements set forth as Exhibit B to the Debtor's

Disclosure Statement which represent the best estimate of the Debtor's management as to the items set forth therein and are believed by management to be based on reasonable evaluation for the periods in question.

**6.03   Surrender of Assets**.  Any assets may be surrendered to the holder of the Allowed Secured Claims secured by such asset in satisfaction of such to the extent the parties agree, or if no agreement is reached, after notice and hearing before the Court.

**6.04   Distribution to Creditors**.  The Reorganized Debtor shall be responsible for making all distributions and other payments required under this Plan.

**6.05   Disputed Non-Tax Claims**:  In the event that a non-tax Claim is not Allowed by the Court until after one or more distributions or payments otherwise would have been due under the Plan on account of such Claim, then, every such payment or payments, which would have been due earlier to that Creditor, shall be made within ninety (90) days after the Allowance Date of such Claim.

**6.06   Disputed Tax Claims**:  In the event that a dispute arises as to a Priority Tax Claim, the Debtor shall continue to remit such payments as though no such dispute has occurred, until such time as the dispute is resolved.

**6.07   Reporting**.  Pursuant to the requirements of Bankruptcy Rule 2015(a)(5), the Reorganized Debtor shall file written reports of the distributions made under the Plan, and serve copies of the reports on the U.S. Trustee.

**6.08   Entry of Final Decree**.  As soon as is practicable after the Effective Date, the Reorganized Debtor shall file an application with the Clerk of the Court requesting entry of a final decree closing the case; provided, however, the Reorganized Debtor shall not file an application for Final Decree in this case until and unless the conditions to the Plan becoming effective in Article XIV herein have been fully met.  The Reorganized Debtor shall be responsible for all United States Trustee statutory fees owed pursuant to 28 U.S.C. § 1930 until entry of the final decree and closing of the bankruptcy case.  The Reorganized Debtor shall not be responsible for any United States Trustee statutory fees after the bankruptcy case is closed.

## ARTICLE VII:
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**7.1   Assumption or Rejection of Executory Contracts and Unexpired Leases**.

7.1.1   On the Effective Date or except as otherwise provided herein, each Executory Contract not previously rejected, assumed, or assumed and assigned, shall be deemed automatically assumed pursuant to Sections 365(a) and 1123(b) of the Bankruptcy Code, unless such Executory Contract: (1) is specifically scheduled to be rejected pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume or reject as of the Effective Date; (3) is a contract, instrument, release, or other agreement or document entered into in connection with the Plan; or (4) is a D&O Policy or an insurance policy.

7.1.2    Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumption of all Executory Contracts, but for those listed in the Plan Supplement, pursuant to Sections 365(a) and 1123(b) of the Bankruptcy Code.  In addition, the Bankruptcy Court shall retain jurisdiction to approve the assumption, or assumption and assignment, of any other Executory Contract not previously assumed or assumed and assigned, but sought to be assumed, or assumed and assigned on the Effective Date.  Any motions to assume Executory Contracts pending on prior to the Confirmation Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.  Notwithstanding anything to the contrary in the Plan, the Debtor, reserves the right to alter, amend, modify, or supplement the schedules of Executory Contracts identified in this Article VII and in the Plan Supplement.

## 7.2    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases.

7.2.1    Any Cure Claim under each Executory Contract and Unexpired Lease to be assumed pursuant to the Plan shall be satisfied, pursuant to Section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim in Cash on the latter of the Effective Date subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of the Cure Claim, (2) the ability of the Debtor's Estate to provide "adequate assurance of future performance" (within the meaning of Section 365 of the Bankruptcy Code) under the Executory Contract or unexpired lease to be assumed, or (3) any other matter pertaining to assumption, then the Cure Claim required by Section 365(b)(1) of the Bankruptcy Code shall be satisfied within thirty (30) days following the entry of a Final Order or orders resolving the dispute and approving the assumption; provided that prior to the Effective Date, the Debtor may settle any dispute regarding the amount of any Cure Claim without any further notice to any party or any action, order, or approval of the Bankruptcy Court.

7.2.2    Except as added to the Plan Supplement through an alteration, amendment or modification of the same as provided in Section 7.1.2 above, at least twenty-one (21) days before the Confirmation Hearing, the Debtor shall cause notice of proposed assumption and proposed Cure Claims to be sent to applicable counterparties.  Any objection by such counterparty must be filed, served and actually received by the Debtor not later than seven days prior to the Confirmation Hearing.  The Debtor will ask the Court to deem any counterparty to an Executory Contract or unexpired lease that fails to object timely to the proposed assumption or cure amount to have assented to such assumption or Cure Claim.

7.2.3    Subject to satisfaction of the Cure Claims, the assumption of any Executory Contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including bankruptcy-related defaults, arising under any assumed Executory Contract or unexpired lease at any time before the effective date of assumption and/or assignment.  Anything in the Schedules and any Proofs of Claim filed with respect to an Executory Contract or unexpired lease that has been assumed and assigned shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court or any other entity.

**7.3** **Claims Based on Rejection of Executory Contracts and Unexpired Leases**.

7.3.1   Unless otherwise provided by an order of the Bankruptcy Court, any Proofs of Claim based on the rejection of the Debtor's Executory Contracts pursuant to the Plan or otherwise, must be filed with the Bankruptcy Court and served on the Debtor no later than thirty (30) days after the date the Executory Contract is rejected.  In addition, any objection to the rejection of an Executory Contract or Unexpired Lease must be filed with the Bankruptcy Court and served on the Debtor no later than fourteen (14) days after the date the Executory Contract is rejected.

7.3.2   Any Holders of Claims arising from the rejection of an Executory Contract for which Proofs of Claims were not timely filed as set forth in the paragraph above shall not be treated as a creditor with respect to such Claim,  or participate in any distribution in this Chapter 11 Case on account of such Claim, and any Claims arising from the rejection of an Executory Contract not filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtor's Estate or property for the foregoing without the need for any objection by the Debtor or further notice to, or action, order, or approval of the Bankruptcy Court, and any Claim arising out of the rejection of the Executory Contract shall be deemed fully satisfied, released, and discharged, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.  All Allowed Claims arising from the rejection of the Debtor's Executory Contracts shall be classified as Class III General Unsecured Claims, except as otherwise provided by order of the Bankruptcy Court.

7.3.2   Parties subject to a motion to reject an Executory Contract or listed in the Plan Supplement, and not previously rejected, assumed, or assumed and assigned shall be deemed hold an allowed Class III claim, for voting purposes only, in the amount of $1.00.  For the avoidance of doubt, the temporary allowance of such a claim is for Plan voting purposes only and the Debtor reserves all rights to object to the claim for all purposes other than voting in connection with the Plan, including, without limitation, with respect to the priority, amount and liability of such claims for purposes of distribution.

**7.4** **Modifications, Amendments, Supplements, Restatements, or Other Agreements**.  Unless otherwise provided in the Plan, each assumed Executory Contract shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and all Executory Contracts related thereto, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or is rejected under the Plan.

**7.5** **Insurance Policies**.  All of the Debtor's insurance policies and any agreements, documents, or instruments relating thereto are treated as Executory Contracts under the Plan.

**7.6** **Reservation of Rights**.  Neither the exclusion nor inclusion of any contract or lease in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtor that any such contract or lease is in fact an Executory Contract or the Debtor's Estate has any liability thereunder.

**ARTICLE VIII:**
EFFECTS OF CONFIRMATION AND PERFORMANCE

8.00    In addition to any other effects of confirmation set forth in 11 U.S.C. § 1141 or arising under any other law or out of the Plan:

**8.01    Binding Effect**.  Confirmation of the Plan shall bind to the provisions of the Plan, the Debtor, every Creditor and every Equity Interest Holder, whether or not any claim or interest of any such Creditor or Equity Interest Holder is impaired under the Plan, and whether or not any such Creditor or Equity Interest Holder has accepted the Plan.

**8.02    Vesting of Assets**.  On the Effective Date, except as otherwise expressly provide herein with respect to the Allowed Secured Claim of Byline Bank, title to all Assets shall remain/vest in the Reorganized Debtor, as applicable, free and clear of all liens, Claims, Causes of Action, interests, rights, security interests, and other encumbrances and without further order of the Bankruptcy Court.  On and after the Effective Date, except as otherwise provided herein, the Debtor and the Reorganized Debtor may operate its business and my use, acquire, and dispose of their Assets free of any restrictions of the Bankruptcy Code.

**8.03    Continuation of Security Interests**.  Byline Banks's lien, secured interest, and claim is preserved until such time as the Class I claim of Byline Bank is satisfied in full; all other property dealt with by the Plan shall be free and clear of claims and interests of Creditor or Equity Interest Holder, except as otherwise expressly provided in the Plan.

**8.04    Exculpation from Liability.  The Debtor and its postpetition officers and directors, and the Professionals for the Debtor (acting in such capacity) (collectively, the "Exculpated Parties") shall neither have nor incur any liability whatsoever to any person or entity for any act taken or omitted to be taken in good faith in connection with or related to the formulation, preparation, dissemination, confirmation or consummation of the Plan, the Disclosure Statement, any Plan Document, or any contract, instrument, release, or other agreement or document created or entered into, or any other act taken or omitted to be taken, in connection with the Plan or the Bankruptcy Case, in each case for the period on and after the Petition Date and through the Effective Date; provided, however, that this exculpation from liability provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.  The rights granted under this Section 8.04 are cumulative with (and not restrictive of) any and all rights, remedies, and benefits that the Exculpated Parties have or obtain pursuant to any provision of the Bankruptcy Code or other applicable law. In furtherance of the foregoing, the Exculpated Parties shall have the fullest protection afforded under Section 1125(e) of the Bankruptcy Code and all applicable law from liability for violation of any applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase or securities.  Notwithstanding anything to the contrary contained herein, the provisions of this Section 8.04 shall not release, or be deemed a release of, any of the Causes of Action**.

**8.05    Release: Except as otherwise provided for in the Plan, on the Effective Date**

any and all Holders of Claims and Equity Interests shall release unconditionally and hereby are deemed to release unconditionally the Debtor's bankruptcy estate (collectively, the "Released Parties") from any and all claims, obligations, suits, judgments, damages, losses, rights, remedies, causes of action, charges, costs, debts, indebtedness, or liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission, transaction, event or other occurrence taking place between the Petition Date and the Effective Date, which is in any way relating to the Debtor, the Bankruptcy Case, any Property of the Debtor, the business or operations of the Debtor, any Plan Documents, the Plan, or any of the transactions contemplated thereby; provided, however, that this release provision shall not be applicable to any liability found by a court of competent jurisdiction to have resulted from fraud or the willful misconduct or gross negligence of any such party.

**8.06    General Injunction**: Except as otherwise provided for in the Plan, pursuant to Sections 105, 1123, 1129 and 1141 of the Bankruptcy Code, in order to preserve and implement the various transactions contemplated by and provided for in the Plan, as of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons or entities that have held, currently hold or may hold a Claim, debt, liability, or Equity Interest that is treated pursuant to the terms of the Plan are and shall be permanently enjoined and forever barred to the fullest extent permitted by law from taking any of the following actions on account of any such Claims, debts, liabilities, or Equity Interests other than actions brought to enforce any rights or obligations under the Plan or the Plan Documents: (a) commencing or continuing in any manner any action or other proceeding against the Debtor or their respective properties; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or Reorganized Debtor or their Properties; (c) creating, perfecting or enforcing any lien or encumbrance against the Debtor or Reorganized Debtor or their properties; (d) asserting a setoff, right of subrogation or recoupment of any kind not provided for in the Plan against any debt, liability or obligation due to the Debtor or Reorganized Debtor; (e) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the confirmation order; or (f) interfering with or in any manner whatsoever disturbing the rights and remedies of the Debtor or Reorganized Debtor under the Plan and the Plan Documents and the other documents executed in connection therewith.  The Debtor shall have the right to independently seek enforcement of this general injunction provision.  This general injunction provision is an integral part of the Plan and is essential to its implementation.

**8.07    Term of Certain Injunctions and Automatic Stay**.  All injunctions for the benefit of the Debtor or Reorganized Debtor pursuant to Section 105 or other applicable provisions of the Bankruptcy Code, or otherwise provided for in the Bankruptcy Case, and in existence on the Confirmation Date, shall remain in full force and effect following the Confirmation Date, and the automatic stay pursuant to Section 362 of the Bankruptcy Code shall remain in full force and effect following the Confirmation Date and until entry of a final decree, unless otherwise ordered by the Bankruptcy Court and/or provided herein.

**8.08    No Liability for Tax Claims**. Unless a taxing Governmental Unit has asserted a Claim against the Debtor before the appropriate Bar Date, no Claim of such Governmental Unit shall be Allowed against the Debtor or its directors, officers, employees or agents for taxes,

penalties, interest, additions to tax or other charges arising out of (i) the failure, if any, of the Debtor, any of its affiliates, or any other Person or entity to have paid tax or to have filed any tax return (including any income tax return or franchise tax return) in or for any prior year or period, or (ii) an audit of any return for a period before the Petition Date.

**8.09   Regulatory or Enforcement Actions**. Notwithstanding anything to the contrary set forth herein, nothing in the Plan or the Confirmation Order shall restrict any government regulatory agency from pursuing any regulatory or police enforcement action, including for performing its statutory duties against any Person or entity in any forum, but only to the extent not prohibited by the automatic stay of Section 362 of the Bankruptcy Code or discharged or enjoined pursuant to Section 524 or 1141(d) of the Bankruptcy Code. Nothing contained in this Section is intended to, nor shall it, supersede or alter any applicable provisions of the Bankruptcy Code.

**8.10   Solicitation of Plan**. As of and subject to the occurrence of the Confirmation Date: (a) the Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation; and (b) the Debtor and each of their respective directors, officers, employees, affiliates, agents, financial advisors, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

## ARTICLE IX:
## TRANSFERS OF CLAIMS

9.00    In the event that any Creditor shall transfer its Claim, it shall deliver to the Debtor and its attorney, by certified United States Mail, written notice of such transfer, including the name and address of the transferee. The Debtor shall be entitled to assume that no transfer of any Claim has been made until the Debtor shall have so received such written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver or consent given, or other action taken hereunder; and, except as expressly provided in such notice, the Debtor shall be entitled to assume conclusively that the transferee named in such notice shall thereafter be vested with all rights and powers under the Plan of the transferor with respect thereto.

## ARTICLE X:
## RETENTION, ENFORCEMENT, SETTLEMENT, OR ADJUSTMENT
## OF CLAIMS BELONGING TO THE DEBTOR OR TO THE ESTATE

**10.01   Retention of Rights to Pursue Cases of Action**.  Pursuant to Section 1123(b) of the Bankruptcy Code, all Causes of Action are hereby preserved by this Plan, notwithstanding the occurrence of the Effective Date. The Reorganized Debtor shall retain the exclusive authority and

all rights to enforce, commence, and pursue, as appropriate, any and all Causes of Action whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved. For the avoidance of doubt, the preservation of Causes of Action herein includes, without limitation, the Debtor's and Reorganized Debtor's right to object to all Secured Claims, Administrative Claims, Priority Claims, and General Unsecured Claims. The Debtor and Reorganized Debtor may pursue, and through its authorized agents or representative, shall retain and may exclusively enforce, any Causes of Action, as appropriate, in accordance with the Reorganized Debtor's best interests, in its discretion.  No entity may rely on the absence of a specific reference in the Plan, the Plan Supplement Documents, or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against them. The Debtor and the Reorganized Debtor expressly reserve all rights to prosecute any and all Causes of Action. For the avoidance of doubt, the Debtor and Reorganized Debtor reserves and shall retain the applicable Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.

The Reorganized Debtor shall also retain and may prosecute and enforce all defenses, counterclaims, and rights that have been asserted or could be on behalf of the Debtor against or with respect to all Claims asserted against the Debtor or property of the Estate. No claim, right, Cause of Action, or other asset shall be deemed waived or otherwise forfeited by virtue of the Debtor's failure to identify such property in the Debtor's schedules or the Plan Documents.

**10.03   Allowance of Claims and Interests.** After the Effective Date, except as released herein or by Bankruptcy Court order, the Reorganized Debtor shall have and retain any and all rights and defenses the Debtor had with respect to any Claims and Equity Interests immediately prior to the Effective Date.

**10.04   Administration of Claims and Interests.** Except as otherwise specifically provided in the Plan, after the Effective Date, the Reorganized Debtor shall have the authority to file, withdraw, or litigate to judgment any objections to Claims or Equity Interests.

**ARTICLE XI:**
MODIFICATION OF THE PLAN

11.00   The Debtor may propose modifications to the Plan, at any time before confirmation, provided that such Plan as modified meets the requirements of § 1122 and § 1123 of the Code, and the Debtor shall have complied with § 1125 of the Code.

11.01   A Holder of a Claim or Equity Interest that has accepted or rejected the Plan shall, upon modification of the Plan, be deemed to have accepted or rejected the Plan as modified unless, within the time fixed by the Court, such Holder changes such Holder's previous acceptance or rejection.

**ARTICLE XII:**
<u>JURISDICTION OF THE COURT</u>

**12.1    Retention of Jurisdiction**.    Until this Chapter 11 case is closed, the Bankruptcy Court shall retain jurisdiction over all matters, including but not limited to the following: (i) the classification or subordination of the claims of any Creditor and reexamination of Claims which have been Allowed for purposes of voting, and the determination of such objections as may be filed against Creditors' Claims. (The failure by the Debtor to object to, or to examine any Claims for the purpose of voting, shall not be deemed to be a waiver of the Debtor's or Reorganized Debtor's rights to object to, to or re-examine the claim in whole or in part.); (ii) the determination of all questions and disputes regarding title to the assets of the estate, and determinations of all Causes of Action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of confirmation, between the Debtor and any other party, including but not limited to, any right of the Debtor or Reorganized Debtor to recover assets pursuant to the provisions of Title 11 of the United States Code; (iii) the completion or adjudication of any and all adversary or contested proceedings now or hereafter arising; (iv) the entry or enforcement of any and all orders, including injunctions, necessary to enforce the title, rights, and powers of the Debtor or Reorganized Debtor and to impose such limitations, restrictions, terms and condition of such title, rights and powers as the Court may deem necessary (a violation of any provision of the Plan shall constitute a violation of the Order Confirming the Plan); (v) the correcting of any defect, the curing of any omission, or the reconciliation of any inconsistency in this Plan, or the order of confirmation, or any other order entered by this Court as may be necessary to carry out the purposes of this Plan; (vi) any necessary interpretation or enforcement of the terms and conditions of this Plan and any order entered by this Court; (vii) any order or other actions necessary to protect or preserve any assets or proceeds being administered under the Plan; and (viii) the entry of an order concluding and terminating the case.

**12.2    Consent to Jurisdiction**. Upon any default under the Plan, the Debtor consents to the jurisdiction of the Court and agrees that the Bankruptcy Court shall be the preferred forum for all proceedings relating to any such default.  By accepting any distribution under or in connection with the Plan, by filing any Proof of Claim, by filing any Administrative Expense Claim or Cure Claim, by voting on the Plan, by reason of being served with notice of the filing of the Bankruptcy Case or the Confirmation Hearing, or by entering an appearance in the Bankruptcy Case, Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors and foreign parties in interest, have consented, and shall be deemed to have expressly consented, to the jurisdiction of the Court for all purposes with respect to any and all matters arising under title 11, or arising in or related to the Debtor, the Plan, or the Case.

**ARTICLE XIII:**
<u>MISCELLANEOUS PROVISIONS</u>

**13.1    Revocation or Withdrawal of the Plan**.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws the Plan, or if Confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to (a) constitute a waiver or release of

any Claims against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**13.2   Further Assurances**.  The Debtor agrees, and is hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

**13.3   Headings**.  The headings and table of contents used in the Plan are for convenience and reference only and shall not constitute a part of the Plan for any other purpose or in any manner affect the construction of the provisions of the Plan.

**13.4   Notices**.  All notices, requests or other communications in connection with, or required to be served by, the Plan shall be in writing and shall be sent by United States first class mail, postage prepaid, or by overnight delivery by a recognized courier service, and addressed as follows: (i) if to the Debtor, Attn. Garrett Belschner, 303 W. Erie St., Ste. 220, Chicago, IL 60654 with copies to E. Philip Groben c/o Gensburg Calandriello & Kanter, P.C., 200 West Adams Street, Suite 2425, Chicago, Illinois 60606, (ii) if to the Office of the United States Trustee, Attn., Denise DeLaurent, 219 South Dearborn Street, Suite 873, Chicago, Illinois 60604.  Copies of all notices under the Plan to any party shall be given to each of the parties listed above contemporaneously with the giving of such notice.  Any of the parties listed above may change the person or address to whom or to which notices are to be given hereunder by filing a written instrument to that effect with the Bankruptcy Court.

**13.5   Sufficiency of Notice**.  Unless the Court, the Bankruptcy Rules, or the Local Rules require other and further notice, notice shall be deemed sufficient if given to the Debtor, the U.S. Trustee, Attorney for the Debtor, and every holder of an Allowed Secured Claim directly and materially affected by the matter which is the subject of the notice. Notice to all interested persons shall not be necessary, except in the event of a general and material modification of the Plan for which a general vote of creditors is required by the Bankruptcy Code.

**13.6   Governing Law**. Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provision of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Illinois, without giving effect to the principles of conflicts of law thereof.

**13.7   Limitation on Allowance**.  No attorneys' fees, punitive damages, penalties, exemplary damages, or interest shall be paid with respect to any Claim or Equity Interest except as otherwise expressly provided in the Plan or as Allowed by a Final Order of the Bankruptcy Court.

**13.8   Setoffs**. Subject to the limitations provided in Section 553 of the Bankruptcy Code, the Debtor may, but shall not be required to, set off against any Claim and any distribution to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever the Debtor

may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor of any such claim that the Debtor may have against the Holder of such Claim.

**13.9    Successors and Assigns**. The rights, benefits, duties and obligations of any Person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person or entity.

**13.10   Modification of Payment Terms**. The Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in Section 1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date, upon the consent of the Holder of such Allowed Claim.

**13.11   Entire Agreement**.   The Plan and the Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.   No Person or entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter thereof, other than as expressly provided for therein or as may hereafter be agreed to by such Person or entity in writing.

**13.12   Severability of Plan Provisions**. If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of the Debtor, shall have the power to alter or interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.   Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term or provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

**13.13   Controlling Document**. To the extent the Confirmation Order or the Plan is inconsistent with the Disclosure Statement or any agreement entered into between the Debtor and any third party, unless otherwise expressly provided in the Plan or the Confirmation Order, the Confirmation Order and the Plan shall control over the Disclosure Statement and any such agreement.  The Confirmation Order (and any other Final Orders of the Court) shall be construed together and consistent with the terms of the Plan; provided, however, to the extent the Confirmation Order is inconsistent with the Plan, the Confirmation Order shall control over the Plan.

**13.14   Plan Supplement**. The Plan Supplement shall be filed with the Court as an exhibit to the Disclosure Statement; provided, however, that the Debtor may amend the Plan Supplement through and including the Confirmation Date with notice to the parties affected by such amendment.  Upon its filing with the Court, the Plan Supplement may be inspected at the Clerk's Office during normal business hours or may be obtained from the Court's copying service upon the payment of the appropriate charges.

**13.15  Substantial Consummation**. The Debtor shall request an order of the Court to deem the Plan to be substantially consummated within the meaning of Section 1101 of the Bankruptcy Code upon commencement by the Debtor of the first distribution to creditors described in Article VI.

## ARTICLE XIV:
## CONFIRMATION OF THE PLAN

**14.01  Conditions to Confirmation**. The following are conditions precedent to confirmation of the Plan:

(a) The Clerk of the Court shall have entered an order or orders (i) approving the Disclosure Statement as containing "adequate information" pursuant to Section 1125 of the Bankruptcy Code, (ii) authorizing solicitation of votes with respect to the Plan, (iii) determining that all votes are binding and have been properly tabulated as acceptances or rejections of the Plan, (iv) confirming and giving effect to the terms and provisions of the Plan, (v) determining that all applicable tests, standards, and burdens in connection with the Plan have been duly satisfied and met by the Debtor and the Plan, (vi) approving the Plan Documents, and (vii) authorizing the Debtor to execute, enter into, and deliver the Plan Documents and to execute, implement, and to take all actions otherwise necessary or appropriate to give effect to the transactions and transfer of assets contemplated by the Plan and the Plan Documents;

(b) The Confirmation Order, the Plan Documents, and the Plan are each in a form satisfactory to the Debtor; and

(c) The Confirmation Order shall include a determination that all of the settlements and compromises contained herein meet the applicable standards under § 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019 for approval and implementation.

**14.01  Compliance with 11 U.S.C. § 1129(a)**.  The Debtor submits that all of the applicable requirements of subsection (a) of section 1129 of the United States Bankruptcy Code are met with respect to the Plan, that it has been proposed in good faith and not by any means forbidden by law, and that the Plan does not discriminate unfairly, and is fair and equitable with respect to each class of claims or interests that is impaired under the Plan.

Respectfully Submitted,

Spybar Management LLC,
    Debtor herein.

By:    /s/ E. Philip Groben
       One of its Attorneys

E. Philip Groben (ARDC# 6299914)
Email: pgroben@gcklegal.com
Matthew T. Gensburg (ARDC# 6187247)

Email: mgensburg@gcklegal.com
GENSBURG CALANDRIELLO & KANTER, P.C.
200 West Adams St., Ste. 2425
Chicago, Illinois 60606
Phone:  312-263-2200
Fax:  312-263-2242